1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAMON SAVALA, | ) | 1:04cv6500 DLB |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **BACKGROUND**

Plaintiff Ramon Savala ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On March 7, 2005, the Honorable Anthony W. Ishii reassigned the case to the undersigned for all purposes.

1

**FACTS AND PRIOR PROCEEDINGS**[2]

2    Plaintiff filed an application for supplemental security income and disability insurance

3 benefits on September 13, 2002[3], alleging disability since April 9, 1998, due to a "lower lumbar

4 back injury, left knee, right knee, left eye." AR 63-65, 77-78. After being denied both initially

5 and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge

6 ("ALJ"). AR 46-49, 52-56, 57. On April 6, 2004, ALJ Bert Hoffman held a hearing. AR 299-

7 338. On May 20, 2004, ALJ Hoffman found that Plaintiff was not disabled. AR 9-17. On

8 September 17, 2004, the Appeals Council denied review. AR 5-8.

9    Hearing Testimony

10    ALJ Hoffman held a hearing on April 6, 2004, in Fresno, California. AR 299. Plaintiff

11 appeared along with his attorney, Melissa Proudian. AR 299.

12    Plaintiff testified that he was 47 years old at the time of the hearing. He completed the

13 twelfth grade and was currently enrolled at Fresno City College. AR 304-305. He attends

14 classes five days per week, from 9:00 a.m. to 2:00 p.m., and spends two to three hours per day

15 studying. AR 305-306. He rides the bus to school. AR 306. He was working on getting his

16 driver's license back and was enrolled in rehab. AR 307. He also used the bus to get to his rehab

17 classes. AR 308. If he gets his license back, he may try and get his commercial license back as

18 well. AR 315. He last worked in 1998 as a spot welder making vending machines. AR 308.

19    When questioned by his attorney, he indicated that he was going to school to better

20 himself and find a job that he can do, such as working with computers or being a teacher or

21 counselor. AR 317. He would like a job where he doesn't have to use his back. AR 317. He

22 has not had a drink since January 2003. AR 318.

23    He did not feel like he could perform any job on a full-time basis because of his back.

24 AR 318. He explained that he has been in the disabled student program at Fresno City College

25

26    [2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

27    [3] Plaintiff filed a prior application for disability insurance benefits and supplemental security income in

28 2000. On July 17, 2002, ALJ Michael J. Haubner denied the application. AR 32-39. The Appeals Council denied review on December 6, 2002. AR 12.

1   since January 2004.  AR 318.  He is allowed to change positions during classes.  AR 320.  After
2   sitting for half an hour in class, he gets up and walks around.  AR 320.  He walks about half a
3   block from where the bus drops him off to class, and has to walk about a quarter of a mile to get
4   on the bus.  AR 322.  He testified that he tries not to lift anything because of his back.  AR 323.
5   He uses a bag with wheels to carry his textbooks.  AR 323.

6          He takes pain medications every day, including Vicodin, which he takes every eight
7   hours.  AR 324.  He then explained that he takes Vicodin about four days a week.  AR 325.  The
8   Vicodin makes him forgetful and interferes with his ability to study once or twice per week.  AR
9   326.  He rated his back pain as an eight (10 being the worst pain) without medication and a seven
10  with medication.  AR 328.  The pain is located in the lower part of his back and travels from the
11  back to the front.  AR 329.  It radiates to his right knee and his waist.  AR 329.

12         In addition to the medication, Plaintiff gets massages and uses a TENS unit every other
13  day.  AR 331.  It doesn't take the pain away completely, but helps.  AR 332.  He had physical
14  therapy that made him stronger but didn't help with the pain.  AR 332.  He had three injections
15  for the pain which only worked for one day.  AR 332.  His doctors do not recommend surgery
16  because there is only a 50 percent chance that it would solve the problem.  AR 332.  Rather than
17  surgery, he has chosen to rely on medications, the TENS unit and weight loss.  AR 332.

18         Plaintiff testified that his condition has changed since the last hearing because he now has
19  new pain in his groin area that started about two to three months ago.  AR 334.  He also indicated
20  that his neck "locks in place" when he is studying and he has to move it around.  AR 335.

21         Medical Record

22  _____Plaintiff re-injured his low back at work in April 1998.  AR 126.  X-rays of the spine
23  taken on April 16, 1998, revealed straightening of the normal cervical lordosos, minimal
24  dextroscoliosis and minimal osteophytes in the thoracic spine, and degenerative changes at L4-5
25  disc space in the lumbosacral spine.  AR 149-150.  A June 19, 1998, lumbar MRI revealed slight
26  thoracolumbar scoliosis, left paracentral L4-5 disc extrusion, and slight central protrusion at L5-
27  S1.  AR 131.  Plaintiff was referred to physical therapy in July 1998.  AR 126.

28         In July 1999, Plaintiff was restricted to light work.  AR 247.

3

1    In 2000 and 2001, Plaintiff's back pain was treated with medication.  AR 201-202, 207,

2  210, 214-215, 222, 227-229, 232.

3    Plaintiff underwent a bone sect of the lumbar spine in July 2001, which revealed a vague,

4  minimal increase in uptake involving the right L4-5 disc space.  AR 184.  The test could not

5  exclude this as a component of early disc disease.  AR 184.

6    Plaintiff underwent lumbar x-rays in August 2001.  AR 209.  The x-rays revealed mild

7  degenerative changes at L4-5, mild osteophytes at L4-5 and L5-S1, and small Schmorl's nodes at

8  L2-3 and L3-4.  AR 209.

9    An October 2001 MRI of the lumbar spine revealed a small left paracentral bulge at the

10  L4-5 level with associated annular fissure and mild facet joint arthropathy at L4-5.  AR 205.

11    On May 31, 2002, Plaintiff saw David Cardona, M.D. for his back pain.  Dr. Cardona

12  noted a decreased range of motion in his back and advised Plaintiff to continue his medications.

13  AR 194.

14    On July 18, 2002, Plaintiff returned to Dr. Cardona for follow up of his back pain.  AR

15  193.  He had a decreased range of motion in his back.

16    On August 14, 2002, Plaintiff complained of blurry vision in his left eye.  AR 241.

17  Visual acuity testing showed normal vision in his right eye and 20/400 vision in his left eye.  AR

18  241.

19    In November 2002, Plaintiff reported blurred vision.  AR 287.  He was prescribed

20  glasses.  AR 287.

21    On January 20, 2003, Plaintiff underwent a psychological evaluation by Richard Engeln,

22  Ph.D.  AR 248.  Upon examination, Plaintiff presented no evidence of any mental or emotional

23  illness.  AR 251.  His intellectual measurement was in the low average range.  AR 251.  Dr.

24  Engeln opined that Plaintiff was capable of job adjustment in a context where instructions are

25  multi-dimensional and independency is demanded.  AR 251.

26    On January 29, 2003, Plaintiff saw Sherry Lopez, M.D. for a consultive internal medicine

27  evaluation.  AR 255.  Plaintiff complained of low back pain and left eye problems, but indicated

28  that he was not being treated for his back pain at the time.  AR 255.  Plaintiff did not have any

difficulty maneuvering throughout the room.  AR 256.  Upon examination, his peripheral vision was intact and there were no funduscopic abnormalities.  AR 256.  He had full range of motion in his cervical spine, but decreased range of motion in the dorsolumbar region.  AR 257.  Straight leg raising was negative in the seated and supine position, but Plaintiff complained of chronic back pain.  AR 257.  There was some pain to palpation throughout his low back, but no palpable muscle spasm, joint tenderness or effusion.  AR 257.  Dr. Lopez diagnosed chronic low back pain and left eye problems.  AR 258.  She indicated that Plaintiff's back pain does not have any neurological signs that correlate with the severity of his pain.  AR 258.  She indicated that Plaintiff's eye problem did not limit him as he still drives, can see light from dark, and was able to walk up and down the halls without bumping into them.  She opined that Plaintiff could stand and walk for six hours and could sit without restriction.  AR 258.  He could lift 10 pounds frequently and 20 pounds occasionally.  AR 258.  He could occasionally bend, stoop, and crouch.  AR 258.  Dr. Lopez indicated that Plaintiff, at 5'9" and 270 pounds, was very obese and needed to be in an exercise program to decrease his weight so his back pain would lessen.  AR 258.

In February 2003 and June 2003, State Agency physicians concluded that Plaintiff had no severe mental or physical impairments.  AR 261-264.

In April 2003, Plaintiff was evaluated by Tomas Rios, M.D.  Plaintiff complained of waxing and waning back pain and stated that his current treatment was providing relief.  AR 279.  He had reduced lumbar range of motion and a slight limp.  AR 280.

Plaintiff returned to Dr. Rios in May 2003.  AR 276.  He had positive straight leg raising and reported that he had some spasm, but indicated that medication "has been relieving his pain and discomfort to his back" and he denied any unusual side effects.  AR 274, 276-277.

Dr. Rios examined Plaintiff in September 2003 and noted noticeable spasm along the paralumbar area with noticeable loss of the normal lumbar curve.  AR 270.

In December 2003, Plaintiff was re-evaluated by Dr. Rios.  AR 265.  Plaintiff continued to have waxing and waning back pain and required medication for significant relief.  AR 265.  Upon examination, Plaintiff had a perceptible loss of the normal cervical curve and cervical flexion was limited due to pain.  AR 265.  He had noticeable stiffness on movement of the

1   cervical spine.  AR 265.  He had some tenderness in his mid back and restricted lumbar

2   flexion/extension in his lower back.  AR 266.  Dr. Rios diagnosed lumbar radiculitis, lumbar

3   stenosis and recurrent myospasm in the paralumbar area.  AR 266.  Dr. Rios indicated that

4   Plaintiff "overall has adequate control of his pain" and refilled his medications.  AR 266.  Dr.

5   Rios characterized Plaintiff's treatment as conservative.  AR 266.

6   ALJ's Findings

7   _____At the beginning of his decision, the ALJ explained that the Agency's previous finding of

8   non-disability was entitled to res judicata through the date of the decision, July 17, 2002.  AR 12.

9   He determined that Plaintiff had the severe impairments of lumbar disc disease and decreased

10  vision in his left eye, but that he had the residual functional capacity ("RFC") for a range of

11  sedentary work.  He found Plaintiff's testimony not fully credible.  AR 14.

12                          **SCOPE OF REVIEW**

13          Congress has provided a limited scope of judicial review of the Commissioner's decision

14  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

15  the Court must determine whether the decision of the Commissioner is supported by substantial

16  evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

17  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

18  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

19  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

20  401.  The record as a whole must be considered, weighing both the evidence that supports and

21  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

22  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

23  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

24  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

25  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

26  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

27  Cir. 1987).

28

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4]  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe" (lumbar disc disease and decreased vision in the left eye) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; (5) but retains the RFC to perform a significant number of jobs in the national economy.  AR 16-17.

Plaintiff argues that (1) the ALJ's RFC analysis requires a finding that Plaintiff is disabled as a matter of law; (2) the ALJ made inconsistent RFC findings; (3) the RFC should have taken into account Plaintiff's severe impairment of decreased vision in his left eye; and (4) the ALJ should have used a vocational expert.

---

[4]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1

**DISCUSSION**

2 A.    RFC Finding

3          Plaintiff first argues that the ALJ's RFC analysis requires a finding that Plaintiff is

4 disabled as a matter of law.

5          RFC is an assessment of an individual's ability to do sustained work-related physical and

6 mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a

7 week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment must be based on all of

8 the relevant evidence in the record, including the effects of symptoms that are reasonably

9 attributed to a medically determinable impairment.  SSR 96-8p.  In addition, the adjudicator

10 "must consider limitations and restrictions imposed by all of an individual's impairments, even

11 those that are not 'severe,'" because such limitations may be outcome determinative when

12 considered in conjunction with limitations or restrictions resulting from other impairments.  SSR

13 96-8p.

14          Here, the ALJ found the following RFC:

15          The claimant has the residual functional capacity to lift and carry 20 pounds occasionally
           and 10 pounds frequently, sit and stand for 2 hours each in an 8-hour day, walk for 1 hour
16          in an 8-hour day, and occasionally bend, squat, crawl and climb.

17 AR 16.

18          Plaintiff contends that this RFC totals only 5 hours of exertional work activity in an 8-

19 hour day, which is below what is necessary for even sedentary work.  Plaintiff argues that this

20 makes him disabled as a matter of law.

21          In opposition, Defendant explains that the ALJ, in examining whether to apply the

22 principal of res judicata, determined that Plaintiff "has not presented any new or material

23 evidence warranting a change in his residual functional capacity."  AR 12.  Based on this,

24 Defendant contends that the ALJ intended to adopt the prior RFC finding but accidentally

25 omitted and/or rephrased the prior RFC.

26          In the July 17, 2002, decision denying Plaintiff's prior application, ALJ Haubner found

27 the following RFC:

28

the claimant can lift and carry 6-10 pounds frequently and 11-20 pounds occasionally, sit 2 hours at a time in an 8 hour day, stand 2 hours at a time in an 8 hour day, walk 1 hour at a time in an 8 hour day, and can occasionally bend, squat, crawl and climb a ladder or steps.

AR 36.

Indeed, it appears that the ALJ inadvertently omitted the phrase "at a time," so that his RFC finding indicated that Plaintiff could sit and stand for only two hours each.  Given the ALJ's statement that Plaintiff presented no evidence to warrant a departure from the previous RFC and the fact that the substantive findings of the two RFC determinations are identical, the Court agrees with Defendant.  A review of the medical evidence and the remainder of the ALJ's decision makes an argument to the contrary, i.e., that the ALJ intended to find that Plaintiff could only stand and sit for two hours each per day, inconceivable.  For example, after a relatively benign examination, Dr. Lopez opined that Plaintiff could stand and walk for six hours and could sit without restriction.  AR 258.  Moreover, the evidence suggests that Plaintiff's pain was well controlled with medication.  AR 266, 276-277, 297.  At most, the ALJ's omission was harmless error.  *See Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

B.      Inconsistent RFC Findings

Next, Plaintiff argues that the ALJ made irreconcilable RFC findings throughout his decision.  Plaintiff alleges that the ALJ's finding that he can perform less than the full range of sedentary work is inconsistent with the ALJ's "functional expression of RFC."  Opening Brief, at 7.

Plaintiff's argument is a slightly different take on his first argument, and he again uses the ALJ's typographical error in the RFC determination to assert an error.  However, as explained above, the ALJ intended to adopt the prior RFC finding and the Court will proceed on that basis. Accordingly, Plaintiff's argument is without merit.

C.      Eye Impairment and RFC Finding

Plaintiff contends that the ALJ should have incorporated any work-related limitation caused by Plaintiff's left eye impairment, which was found severe at step two, into his RFC

1  finding.  At the very least, Plaintiff argues that the ALJ should have provided an explanation as

2  to why a functional effect was not articulated, pursuant to SSR 96-8p.

3       As discussed above, the RFC assessment must be based on all of the relevant evidence in

4  the record, including the effects of symptoms that are reasonably attributed to a medically

5  determinable impairment.  SSR 96-8p.  In addition, the adjudicator "must consider limitations

6  and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'"

7  because such limitations may be outcome determinative when  considered in conjunction with

8  limitations or restrictions resulting from other impairments.  SSR 96-8p.

9       Here, the ALJ found that Plaintiff had the severe impairment of decreased vision in his

10  left eye but did not assess any resulting limitations.  Contrary to Plaintiff's suggestion,  a severity

11  finding at step two does not mean that functional limitations will automatically result at step four.

12  The analysis at each step is separate and distinct and one finding does not dictate any particular

13  outcome.  A "severe" impairment at step two is merely an impairment or combination of

14  impairments that has more than a minimal effect on the claimant's abilities to perform basic

15  work activities.  *See* SSR 85-28.  The step two analysis is a threshold one which enables the ALJ

16  to deny benefits based on medical considerations alone to those applicants with impairments of

17  such minimal nature that they could never prevent a person from working.  *Id.*  The ALJ's

18  findings that Plaintiff's left eye impairment passed this minimal threshold did not dictate any

19  particular outcome, but rather allowed the ALJ to go further with the sequential evaluation where

20  he could consider both medical and vocational evidence.

21       The ALJ properly reviewed the evidence in determining that Plaintiff's decreased vision

22  in his left eye did not result in any functional limitations.  In 2002, Plaintiff complained of

23  blurred vision and was simply prescribed glasses.  AR 14, 287.  In 2003, although Plaintiff told

24  Dr. Lopez that he had scar tissue in his left eye, she did not find any funduscopic abnormalities.

25  AR 13, 258.  His peripheral vision was intact and his pupils were equal and reactive to light and

26  accommodation.  AR 256.  She opined that his eye problem did not appear to limit him, as he

27  was able to distinguish light from dark, was able to drive, and was able to walk up and down the

28  halls without bumping into them.  AR 13-14, 258.  The ALJ also noted the inconsistency

10

1  between Plaintiff's statement to Dr. Engeln that he was almost blind in his left eye and his

2  attempts to reinstate his commercial driver's license.  AR 15, 249.

3      The ALJ was therefore presented with evidence of absolutely no limitations stemming

4  from his left eye impairment.  Substantial evidence therefore supported his RFC finding.  In as

5  much as Plaintiff argues that the ALJ should have included a discussion of Plaintiff's capacity to

6  work with small objects, follow instructions, and/or avoid ordinary hazards in the workplace,

7  there was no evidence to warrant such a discussion.

8  D.    Vocational Expert Testimony

9      Finally, Plaintiff contends that the ALJ should have used a vocational expert ("VE") for

10  two reasons: (1) to assess the impact of Plaintiff's severe vision impairment on the occupational

11  base; and (2) given the RFC for less than a full range of sedentary work, a VE was needed prior

12  to applying Rule 201.21 as a framework for a disability finding.

13      In general, where a claimant suffers only from exertional limitations, the ALJ may apply

14  the Grids at step five to match the claimant with the appropriate work.  *Reddick v. Chater*, 157

15  F.3d 715, 729 (9th Cir. 1998).  The ALJ may apply the Grids in lieu of taking VE testimony only

16  when the Grids accurately and completely describe the claimant's abilities and limitations.  *Id.*

17  (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).  If a claimant's non-exertional

18  limitations "significantly limit the range of work" he can perform, mechanical application of the

19  grids is inappropriate and a vocational expert would be needed to describe what, if any, jobs

20  existed in the national economy that the claimant could perform.  *Desrosiers v. Secretary of

21  Housing and Health Services*, 846 F.2d 573, 577 (9th Cir. 1988).  The determination of whether

22  a non-exertional limitation significantly limits the range of work the claimant is able to perform

23  is left to the ALJ.  *Id.*

24      Plaintiff has again repackaged previous arguments in attacking the ALJ's decision not to

25  use a VE.  Plaintiff's argument that the ALJ should have used a VE to discuss the erosion of the

26  occupational base based on Plaintiff's eye impairment is without merit as the Court has

27  determined that his eye impairment did not cause any functional limitations.  Similarly, insofar as

28  Plaintiff argues that the less-than-sedentary RFC required VE testimony prior to reliance on the

1    Grids, the Court has determined that the ALJ intended to adopt the prior RFC finding that

2    Plaintiff could perform a restricted range of sedentary work.[5]  AR 36-37.

3        In a connected argument, Plaintiff contends that the ALJ incorrectly determined that the

4    presumption of continuing non-disability applied.  The principals of res judicata apply to

5    administrative decisions and in order to overcome the presumption of continuing non-disability

6    arising from a prior ALJ's finding of non-disability, plaintiff must prove "changed

7    circumstances" indicating a greater disability.  *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).

8    A changed circumstance includes a change in the claimant's age category under 20 CFR

9    404.1563 or 416.963, an increase in the severity of the claimant's impairment(s), the alleged

10   existence of an impairment(s) not previously considered, or a change in the criteria for

11   determining disability.  Acquiescence Ruling 97-4(9).

12       Plaintiff's argument is well taken, but it does not change the fact that the ALJ's final

13   conclusion was supported by substantial evidence.  In reading the decision, it appears that the

14   ALJ applied the presumption at the wrong step.  He explains that Plaintiff has not presented any

15   new or material evidence warranting a change in his RFC, and therefore the presumption of

16   continuing non-disability applies.  AR 12.  However, it is not a change in the RFC that dictates

17   whether the presumption applies.  Rather, as explained above, the ALJ must determine whether

18   "changed circumstances" exist to determine the applicability of the presumption.  If a changed

19   circumstance exists, the claimant has rebutted the presumption and the ALJ must adopt certain

20   prior findings, such as RFC, unless new and material evidence is presented.

21       In Plaintiff's case, he presented a new allegation of a left eye impairment.  This

22   impairment, which was found to be severe by the ALJ, was not alleged in his previous case and

23   constitutes a changed circumstance.[6]  The ALJ should therefore have found that Plaintiff rebutted

24   the presumption by demonstrating a changed circumstance, but that no new and material

25

26       [5] In his decision, the ALJ noted that the VE at the prior hearing identified a significant number of jobs for
27   each of the five hypothetical questions posed.  AR 16.

28       [6] In his reply, Plaintiff argues, for the first time, that there was a change in age category.  Although this
     constitutes another changed circumstances, it does not alter the ultimate finding of non-disability.

1    evidence existed to warrant a change in the RFC finding.  The ultimate conclusion, that

2    Plaintiff's RFC required a finding of not disabled, remains the same and is supported by the

3    evidence as explained above.  This error is harmless and does not warrant remand.  *Batson v.*

4    *Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did

5    not negate the validity of the ALJ's ultimate conclusion).

6                                               **CONCLUSION**

7            Based on the foregoing, the Court finds that the ALJ's decision is supported by

8    substantial evidence in the record as a whole and is based on proper legal standards.

9    Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

10   Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

11   favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff,

12   Ramon Savala.

13          IT IS SO ORDERED.

14       **Dated:    August 24, 2005    **                  **    /s/ Dennis L. Beck    **

15   3b142a                                              UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28